Good morning, your honors. May it please the court, my name is Jonathan Libby and I appear on behalf of the appellant Chance Rearden. I intend to reserve three minutes for rebuttal. The first issue I'd like to address this morning is the question of whether the government in fact proved that the images portrayed actual children as opposed to merely computer generated images. The government essentially makes two arguments. First, that their expert's testimony supported a finding that the pictures were of actual children. And second, that the judge as the fact finder could himself merely look at the pictures and make a lay determination that these in fact were actual children rather than computer generated. Both of these arguments should be rejected. With respect to Are you challenging the sufficiency of the evidence? That is correct, your honor. Okay. With respect to the expert testimony, the government relies on a statement by their experts on cross-examination that computer technology is not such that realistic pictures could be created. In fact, the expert was not actually qualified to make such a statement. Well that's not a sufficiency objection, that's a qualification objection. You didn't offer any corresponding or countervailing expert testimony. So we're left with your cross-examination of the only expert who testified and the district court's determination that under Daubert that testimony was admissible and sufficient. So where does that leave us? Well, except the judge, in fact, as the fact finder, obviously the judge can be assumed to accept his own rulings and limitations in terms of what is lawful evidence that was presented. The court indicated that the expert could not testify with respect to whether what he's talking about could be done, whether in other words exactly what he testified to, that technology is not such. But that goes to the weight or credibility that is otherwise due, not to its admissibility. That perhaps is true, Your Honor. Now, of course, it's not clear what the judge, in fact, relied on in terms of making a decision, whether he relied on the expert's testimony because the government, in fact, argued that he could merely look at the pictures. I would agree, though, that we look at the totality of the evidence that was adduced in addressing the claim that you raised. That is correct, Your Honor. That is correct. As a matter of law, I believe the expert's testimony was beyond belief because as the court was well aware, this court's decision in Free Speech Coalition, which had been issued at that point, the Supreme Court's decision came down about a week after the trial. But this court had certainly indicated that congressional findings were clear that technology is, in fact, such that computer can, in fact, portray it in the picture. So your argument is that that line out of free speech somehow declares for all time, as a matter of law, that the government can't put on an expert in the field to testify that that's not necessarily so with regard to the evidence in this case? Well, I suppose what it comes down to is does the court take what Congress has found in terms of establishing the law as being true, or an expert coming in and giving his own opinion that conflicts with what Congress, in fact, has already found? But Congress wasn't looking at these pictures or the technology that this expert was relying on in offering his opinion. So why is it even relevant what Congress has said if we're comparing different situations? Well, because what Congress has said is, in fact, technology is, in fact, at the point where computers can generate these images. Okay, but even if that's true, we have testimony from an expert in this field that says, okay, I've looked at the pixels or whatever it is he examined, and I conclude that there just isn't any way that these pictures are virtual. Except for the fact that it's an expert who testified to that point which the court had already found was beyond his qualifications. So that's where we're left with the congressional findings. He was already deemed not to be qualified to make an opinion. So to the extent... I guess I'd be more sympathetic to your argument if you had put on some evidence in the defense case where you somehow sought, although I wonder how you'd lay the foundation for it, to admit the congressional conclusion or offered your own expert witness to undercut what the government's witness said. But you didn't do that. You're asking us to go beyond the record, as it were, and take this general statement from a congressional report, I presume, is where that comes from, which our court cited in Free Speech Coalition, and invalidate a Daubert ruling by a judge who heard the expert and presumably determined whether the expert was qualified to render the opinion. Well, again, I'm not sure that, in fact, the judge rendered a Daubert ruling here. But that's not my point. My point is you didn't offer any contravailing evidence. And now you want us to reverse the conviction. And that's a pretty slender read on which to overturn otherwise, evidence that's otherwise within the province of the fact finder and the trial judge to determine as admissible. I certainly understand Your Honor's point. Okay. Have you got another point that you want to get to? Well, I did just, with respect to that, because the government has also argued that, you know, the fact finder can merely look at the images should the court be making a ‑‑ reaching that issue. I would just note that Congress this year, when it enacted the Protect Act, made, again, in its factual findings, made very clear that because many of these images are uploaded onto the Internet and then transferred and retransferred, they make clear the retransmission of images can alter the image so as to make it difficult for even an expert to conclusively opine that a particular image depicts a real child. So if, in fact, it's difficult for an expert to even make that decision, I would certainly submit that a layman would be in a much worse position. With respect to our second issue, which is the four-level sadistic conduct enhancement, we believe the enhancement was improper primarily for two reasons. First, we believe the guideline itself is unconstitutionally vague. And second, because the court's finding that anal penetration of a child is per se sadistic was, in fact, incorrect. With respect to the vagueness argument, the problem, of course, is that the guidelines nowhere define what sadistic conduct is. And courts that have looked at it, looked at the issue, have reached a variety of opinions. What I think is clear is that courts essentially have been saying, well, it's sadistic if at any given moment we think it might be sadistic. But it's certainly not clear to the point that a person of ordinary intelligence would be able to discern what, in fact, is meant by that term in the guidelines. So as far as that is concerned, we believe that, in fact, that guideline itself is unconstitutionally vague, and that until the sentencing commission amends the guidelines, this enhancement, in fact, should not be applied. Is that the right analysis, or do we simply say because of the fact that this is an enhancement within the range of punishment that Congress has otherwise provided for this particular offense that the sentencing commission can promulgate factors that the court should consider in deciding where within the statutory maximum this defendant should be punished? I guess what I'm really challenging in my question is, is there such a thing as an unconstitutional guideline? It's an interesting argument. It's an interesting question. I can only turn to what this Court, in the Gallagher decision, it cited to the Supreme Court's Batchelder decision, suggesting that, in fact, a sentencing guideline can, in fact, be treated for vagueness purposes as any other statute. So I believe certainly we can, in fact, challenge it under the vagueness analysis. Our second issue is whether it was proper to rule that anal penetration is, per se, sadistic. Now, we have a couple of arguments with respect to that point. First, of course, as I said, the guidelines do not, in fact, define what sadistic conduct is. If one looks to the clinical definition of the term, sadism is, in fact, gaining pleasure from the infliction of pain. It's not that, in fact, the victim may have or the partner may have suffered pain, that pain was a byproduct of the sexual act, but that the actor, in fact, gained pleasure from the infliction of the pain. And so from that perspective, to say that any act of penetration, just because it would necessarily be painful, is sadistic, I think is absolutely wrong. It goes against what, in fact, the clinical definition of the term means, and since they didn't define it, I'm not sure where we should, in fact, turn. Another point with respect to that is that if one looks at the definition of sexually explicit conduct, 2256, the statute lays out what, in fact, are those activities that qualify for what we're talking about for child pornography. The statute makes a distinction between sexual intercourse, including anal penetration, and sadistic and masochistic acts. The statute itself makes that distinction. So to say that when the Sentencing Commission added this enhancement to say that an additional enhancement is warranted for this type of behavior, I think it's wrong to then equate it to something that's completely different under the definition of sexually explicit conduct. Certainly if the commission had wanted to say that if the image portrays an act of sexual intercourse as defined in the statute, they certainly could have said that. They didn't say that. They merely said sadistic and masochistic conduct, and if one looks to the statute, that's clearly different from what we're talking about here. So we believe that the enhancement itself was improper in this case. I'd also note the government has raised on appeal that this could also be supported under the violence aspect of the guideline. The guideline says the enhancement is warranted if it's for sadistic, masochistic, or other depictions of violence. They, of course, did not raise that in the district court. The district court judge never reached that issue, and I would submit that they should be foreclosed from raising it in this court. The next issue I'd like to turn to is the various special conditions of supervised release. As a preliminary matter, I'd note that there are a number of discrepancies between the oral pronouncements, the oral statements, and the oral statements by the judge in court of these various special conditions, and what, in fact, is written in the judgment and commitment order. In what respect do you contend that any of those discrepancies is material? It seemed to me what he's doing, pretty plainly, was just reciting off the headnotes, as it were. Well, one of the... I don't have any inconsistency myself, but it's why I'm asking you what specific thing, because obviously the oral pronouncement controls if there is inconsistency. Correct. Well, for example, Your Honor, one thing that appeared in the J&C which was not announced in court was that defendant must abstain from using illicit drugs and alcohol. That was completely different from anything else the court, in fact, had said in court. The J&C... Well, different because the court simply didn't mention it? Is that your imposition? Correct. Correct. The court did not impose that special condition orally in court. Is that required? Does he have to go through the laundry list of every single standard condition? These are not standard conditions, Your Honor. These are special conditions that the court imposed above and beyond the standard conditions. Was there an objection made to the... No, Your Honor, there was not an objection made after the fact. The first objection is this appeal, basically, is that right? That's correct. That's correct. Another one of the conditions that I believe is very material is in the J&C it indicates that Mr. Reardon must submit to physiological testing including polygraph, plethysmograph... I'm just puzzled because I'm looking at the transcript and he says the defendant shall participate in outpatient abuse treatment and submit to drug and alcohol testing. I mean, how does that differ from the J&C? Well, because what the J&C goes on to talk about a number of things that are above and beyond merely what is specified in the J&C. Well, see, here's my problem. Was he – I heard you a minute ago, maybe I misheard you say that he didn't impose any drug, alcohol treatment condition. Well, in fact, he did. So is the question that he – is the problem that he didn't orally elaborate on all that he intended to do? Is that it? Well, yes, because actually I believe that a number of these additions that were in the J&C are, in fact, above and beyond. When – it's one thing to say that one, while undergoing treatment, is supposed to undergo testing. It's another to specify that some of these tests – and I would note, like in the J&C, the plethysmograph testing, a very degrading form of testing. Which just earlier this week, a judge in the central district said, it's worse than voodoo science, I'm not going to impose it, it's ridiculous. While still imposing it – Okay, but I'm not denying the fact that it is all of the above. Why isn't it sufficient for the judge at sentencing to say, I'm sentencing you to, you know, the sex offender treatment, which can include all kinds of modalities that your client might find degrading and so on. But isn't that sufficient for purposes? Well, the sex offender treatment, which of course we've also objected to, but the sex offender treatment was not required in terms of the oral pronouncement. What the judge said in the oral pronouncement was, in the discretion of the probation officer, he should undergo various treatments, psychiatric treatment, which may include sexual – sex offender treatment. Right. These, however, is in addition to that, he must submit to these additional testings. So if the probation – beyond the actual treatment, if the probation officer determines, all right, well, I'm also going to send you, well, a polygraph. I don't think that has anything to do with treatment. Well, let's just stick with the sex offender treatment-related test. I mean, your argument, taken to its logical extreme, would require the sentencing judge to literally outline every treatment modality that a psychiatrist in a sex offender treatment program might employ. You know, I've toured the facility at Butner, and I understand some of the treatment modalities that are utilized, and it certainly includes the tests that are listed in the J&C. So why isn't it sufficient for the district judge at sentencing to simply say, I sentence you to sex offender treatment, without having to identify specific – Oh, I think that's fair. I think that's absolutely fair, Your Honor, that if, in fact, he says that you must undergo sex offender treatment, he does not have to lay out what these additional tests are. I'm saying that these, in fact, he is then, in addition to saying that you may have to undergo sex offender treatment, that you also must submit, at the whim of the probation officer, to this additional testing separate and apart from – Counsel, given the fact that the probation officer is an arm of the court and subject to the court's supervision, aren't there adequate procedures by which a person who wishes to object to something that his probation officer orders him to do can challenge that later, before the sentencing judge can impose those conditions? Well, I think, in practice, what generally happens is he may refuse to undergo a particular procedure, and as a result of that refusal, he's immediately violated, and that is what, in fact, brings an incident to court. You can ask the judge to relieve somebody from a condition of probation. That is certainly true. Yes. In my cases. I mean, it's been 12 years. That is certainly true, Your Honor. Certainly. I'm just saying, certainly it's not difficult for the judge. Clearly, the judge intended – if the judge intended to impose these conditions, he could have, in fact, said that in court. I think what happened here was he read in court what he believed to be the conditions he thought warranted imposition, and then he had a disk from the probation officer, which he just plugged into the J&C. And that's how we got these additional – all of these were certainly recommended by the probation officer. The judge, however, did not impose them at sentencing. So you had noticed before the sentencing that probation was proposing all these conditions? That's correct, Your Honor. And no objection was made to the probation officers? There was objection made to certain – certain of the conditions, but not all of the conditions. Did the court rule on those objections before imposing sentence? Not – not specifically. I mean, he imposed the conditions, which is – Is that count amount to rejecting your objection? Yes, which certainly is implicitly doing that. Okay. We also know – the court gave no explanation for imposing any of these conditions. So it is, in fact, entirely unclear what the court's reasoning was for imposing certain of these restrictions. Well, let's take one for instance. As I understand it, your client was found in possession of what's small quantities of methamphetamine and – I don't – I don't believe he was found – Or admitted that he was using methamphetamine. He admitted that over the course of his lifetime. And that's in the pre-sentence report. Correct. He was coming to stay with him when he was at the bus station. At the bus station. So why isn't that sufficient if it is mentioned in the pre-sentence report and then at sentencing the judge says, Ann, I think you need some – some drug abuse treatment as well? What more does he have to do? Well, certainly with respect to that, I certainly would concede that that perhaps would be sufficient, if there is something in the record to warrant that. But, for example, why was it necessary to order Mr. Reardon from being within 100 yards of a park or playground? He's never had inappropriate contact with a child. The court did not explain why it would be necessary to do so here. Or a guy who basically tells the probation officer that he fantasizes about hunting children and some of the other awful things that – And if that, in fact, was the court's reasoning for doing it, that would be okay. But we don't know for sure that that's why the court did it. The court – we discussed about the sex offender treatment. The court ordered that that perhaps should be appropriate, yet also at the same time ordered he's not a sex offender, which seems to be inconsistent. So I'm not sure why the court imposed many of these conditions. And this is asking why there should be a remand at least for the court to explain why many of these conditions were imposed. And your position? Okay. Mr. – your time has expired. I thank the Court. May it please the Court. John Owens for the United States. The defendant has appealed numerous issues in this case, and I'd like to first address the defendant's sufficiency of the evidence question. There seems to be some confusion as to what exactly the expert was allowed to testify about and not allowed to testify about. Ultimately, I don't think it's material because of ample evidence, even if you exclude everything the expert said. But I wanted to clarify one thing. If you take your – turn your attention to page 97 of the defendant's excerpt of record, that's where the discussions of the defendant's – of the expert's qualifications begins. And in roughly the middle of the page, the government tenders the witness. And the court says, you don't need to do that. He seems to have an adequate background in terms of testifying about these special effects. The defense counsel objects on Daubert grounds. And here's when the district court says, the Daubert-type analysis isn't that mechanically applied in each instance. And then this is the key part. He says, in other words, I don't expect – correct me if I have it wrong – that you're going to opine on some theory. I take it you're going to testify based on things you have already done. The witness says that's correct. Then the court says, so it doesn't relate to whether or not what he's talking about can be done. That's the sentence that the defendant seizes upon here. That in this case, the defendant – the expert limited his testimony in some way. He's only going to testify about certain things. If you read the next sentence, though, what Judge Wilson says, he says, he's saying, the expert, he has done these things correct. So the next line is, so I think he has the requisite background to testify what he's about. This entire discussion that the defense has leapt upon to say somehow limits the government expert's testimony, actually was just about the expert's qualifications in this case. What Judge Wilson was saying was that this expert is qualified, not because he's going to testify about some grand theory of visual effects, but because he's testifying about things he's actually done. And that's why he's qualified. In no way did this colloquy about the defendant's – about the expert's qualifications in any way limit the scope of the expert's ability. It was merely to qualify him. So the suggestion that somehow the expert testified outside the range of his expertise is simply not the case, if you look at the full transcript, as opposed to pulling on that one line. In addition, very briefly on the sufficiency argument, even if the Court were to discredit everything Mr. Jones said, you do have the images before you, or you did, until you return them to the clerk. We've looked at them. And many circuit courts have held, post-Free Speech Coalition, Deaton in the Eighth Circuit, Hall in the Eleventh Circuit, and Kimmler in the Tenth Circuit, have all held that a review of the images is sufficient to uphold the conviction in this case. I next would like to turn briefly to the sadistic enhancement in this case. The defendant has suggested that it's invalid for a couple grounds. One, that it's constitutionally vague. I know, Judge Hallman, you raised the question of, well, can you even address this in this case? It is an interesting question. I don't think you need to reach that question in this case because it clearly is not unconstitutionally vague. It is a plain error review. The defendant did not object to this at trial or at sentencing. I should say. And the Ninth Circuit has upheld terms of similar clarity in many other situations. In the Helmy case, there's the sophisticated weaponry and other terms that the government cites in this brief that the Ninth Circuit has rejected vagueness attacks to. And the Supreme Court in the Ferber case held that the term sadomasochistic abuse is not unconstitutionally vague. And if sadomasochistic abuse is not unconstitutionally vague, then Judge Wilson did not plainly err in concluding that the term sadistic is unconstitutionally vague. The next question is, did the district court apply the proper definition in this case? I would just first set out that the Second, Fifth, Eighth, Tenth and Eleventh Circuits have all applied the very definition that Judge Wilson applied in this case. There has been some suggestion that if you apply this definition, you're going to basically swallow up what all child pornography would qualify as sadistic. And that's not just simply not true. If you look at 2256-2, which is one of the things the defendant pointed out to in the argument and in his briefs, there are the five categories. One of them is sadistic. But Category 5 talks about the lascivious exhibition of genitalia, I believe is the definition. There could be images that qualify as Category 5 that are not sadistic. For example, in the images that you just reviewed, 2305 shows a young boy naked with an erect penis. That photo, the government would submit, is not sadistic. It is child pornography because it has a lascivious exhibition of the genitals, but it's not sadistic. So this definition will not swallow up all of them. It may cover lots of different types of pornography that's true, but that's only because a lot of the pornography that's out there involving children is sadistic. And unless the panel has any more questions on the sadism, I'd like to speak briefly on the fine and then move to the conditions of supervised release. Why don't you go to the conditional argument? We understand the fine. Okay. Thank you. There have been a couple of issues raised on the conditions of supervised release. The first one is, is that Judge Wilson, his oral pronouncement was different than what appears in the JNC. I'd like to take a step back to the pre-sentence report in this case. And at the end of the pre-sentence report, the probation officer had a letter in which the probation officer recommended the terms and conditions of supervised release. Now, not all district court judges let the parties see this, but Judge Wilson does. And in fact, in the defendant's sentencing paper, I think the supplemental sentencing paper, he actually objected by number to some of the conditions here. Not the ones that we're talking about today, but to some other ones. And if you look at these conditions of supervised release, they're numbered 1 through 13. These conditions are word for word the same as what appears in the judgment and commitment order. Now, during the sentencing, and if I turn your attention to pages 268 and 269 of the defendant's excerpt of record, Judge Wilson was simply basically checking these off. I believe the first one, he says 1 and 1, 2. He continues to read them to kind of summarize them. He doesn't read them word for word. That's correct. But he's clearly reading this letter. And in fact, one of the things that he says at the end was there's a recommendation for a sex offender notification. I'm not going to do that. So I'm not sure the panel even needs to resolve the question of, well, what if a district court judge says A, B, and C, and the J and C says A, B, C, D, E, F. Because that's, in this case, everyone knew exactly what the conditions were. The conditions in the letter match the conditions in the J and C. So I don't think the panel even needs to reach it. Now, if the panel does believe it's appropriate to reach the issue concerning, well, if he says drug testing and doesn't specify urine testing as part of the drug testing, is that permissible? I believe it is permissible. I think that there's no conflict. If a district court judge orders drug and alcohol testing but doesn't specify that means every other week you have to urinate in a cup, but the J and C says every other week you have to urinate in a cup, that does not mean the two conflict. In fact, they're consistent. So really, no matter how you look at it in this case, I think that there's no conflict between the oral judgment and the J and C in this case. The second issue concerns whether or not there were sufficient findings by the district court in this case. The defendant suggests in his briefs that there should be a rule that says if there is an unusual condition of supervised release, which I would admit these are not the typical terms, that therefore the district court should have factual findings as to the specific conditions of supervised release. Now, maybe that's a rule that should be in place when the condition is objected to, or one of the parties actually asks for more findings. Judge, why are you doing this? But in this case, there was no objection at all. And to have a new rule for a district court judge that says, look, when the parties apparently agree on the conditions of supervised release, you still have to go on record and say, okay, I know the parties agree, there's no objection, it's in the probation officer's letter, but here's why I'm doing it. And to require a district court judge to take that many steps, or if he doesn't do it, to require the whole thing to be vacated and sent back, simply doesn't, I don't think it's necessary in this situation. So you would confine our case law to those situations where a provision in the J&C is written after the sentencing, where the defense had no notice whatsoever that the court contemplated including them? So in this particular case, the letter saves the case for the government? I don't – I think that the letter is one of the reasons why there's not a problem. Certainly it would be a very different situation is if there was actually no mention at all during the sentencing or anything, and all of a sudden in the J&C this condition appears. That's a different issue. Here you have the letter from probation. Defense objects to some of them, not all of them. They go through the entire sentencing hearing. There's no objection to any of these things. It's then placed in the J&C. And then on appeal, the defendant says, just wait a second, those conditions, they weren't fair, they're not right, and the district court needed to issue findings as to why he did them. District courts are very, very busy these days, and to require them to write a paragraph on each condition of supervised release when there's apparently no objection or no problem with them seems an unnecessary rule. When was the letter provided? Was it given 35 days in advance along with the proposed DSR? Well, unfortunately, the letter – normally that's the case. One of the things is that the letter is actually dated the day of the sentencing. So it can be very difficult to know exactly when the parties received it. I don't know of any objection in the record that the pre-sentence report or the letter was provided less than 35 days. How do we know? Well, the letter doesn't have to be provided at all. That's true. That's true. It's the PSR. I mean, as far as I have to say, I do not know, I cannot say for certain, Judge Tallman, whether or not the parties received this with the records at 35 days. I've seen nothing in the record that suggests otherwise. It says here that the parties were notified on May 29, 2002, and the sentencing in this case – it's referring to page 240 of the excerpt of the record. Make sure I have the dates correct. The sentencing in this case was on June – it says it was on June 3rd. So if you – well, I'm a little stumped actually, Judge Tallman. It says here that this was disclosed on the 29th, and it says the sentencing here was on June 3rd. It says it was dated May 29th. Does it say it was disclosed? It says disclosure date is May 29th, 2002. So if you go by – in the actual pre-sentence report, that first page that has the notification date, it says the 29th. If you go by these dates, it means there was three days between the issuance of the PSR and the sentencing. There was no objection as far as I know to the 35-day rule. So – but if you go by the dates here, this is – I apologize. I wasn't expecting that question, and I apologize that I didn't know the answer. But according to these – Sometimes the questions don't even occur to me. I wish that it occurred to me before, and I would have had a better prepared answer for you. But there was no objection on the Rule 35 ground. As to the particular conditions – oh, take a step back. In addition to the fact that there was no objection to the trial, this was a bench trial. Judge Wilson heard three days of testimony about – and I'm not going to go into all of it here. I think the panel is familiar with the kinds of things that were discussed at trial in this case. There are ample findings in the record or ample evidence in the record to support the conditions of supervised release that the judge imposed. Now, I could imagine a case where, let's say it was a guilty plea, where there was a very sparse record. Maybe there was a – there was the actual plea agreement and the PSR, and that's it. That's very different in this case. And I think if the court, again, is going to impose a rule, a new rule in a district court, it should probably do it in a case where there's really no idea why the district court imposed these findings. Yet we have 700 pages of testimony that suggests why the conditions were appropriate in this case. And with the time I have remaining, I'd like to address some of those conditions of supervised release. Just go just through the list. As to drug and alcohol testing, on the excerpts of record under seal, page 35, it does reveal that when the defendant was stopped at the bus station, he did have a small quantity of methamphetamine and marijuana on him. He's an occasional user. Certainly, there's no plain error in requiring the defendant to do the drug testing. In terms of the psychotherapy in this case, the defendant, in his letter to the court, in defense counsel's papers with the court, and at sentencing, the defendant asked for the opportunity to undergo psychotherapy. Now, I understand now he's saying, well, I didn't ask for that kind of psychotherapy. I asked for this kind of psychotherapy. But, again, if you're reviewing plain error, it's hard to see how Judge Wilson plainly erred in ordering psychotherapy when the defendant asked for it at sentencing. In terms of some of the other restrictions, there's the restriction on the defendant accessing sexually explicit materials. The Ninth Circuit, in the B case, upheld a condition that's very similar to this condition. Again, under the plain error standard, Judge Wilson did not plainly err in instituting it. There's the condition about the defendant's not loitering within 100 feet of children. This condition was upheld in B. And in the Eighth Circuit's decision in Ristine, if you look at the record in this case, the defendant has admitted on the stand that he gets sexually excited or fantasizes about very violent acts against children. Judge Wilson did not plainly err in trying to make sure the defendant was not close to children. And I think the issue that has generated the most litigation recently, and I apologize for the rash of 28 J letters in this case, concerns the Internet restriction. Now, it is true, as the defendant has pointed out, that some courts have struck down these restrictions as being overbroad. But this case is different for several reasons. First, all of the cases that strike down this type of condition, none of those cases were a true plain error review. None. The case that comes the closest is the Sofsky case from the Second Circuit. And in that case, the Second Circuit said that it was actually applying a soft version of plain error review. And its explanation was, is that during the sentencing in this case, this condition of supervised release, the Internet kind of sprung up at the sentencing, and the parties didn't have notice, didn't have time to object, and therefore they were going to apply a soft version of plain error. Well, that's not this case. And in terms of applying true plain error, all of the cases that apply true plain error to an Internet restriction have upheld it. Additionally, in this case, it's not a 100% Internet ban. The defendant can access the Internet with the permission of the probation officer. If the defendant truly has legitimate uses for the Internet, for example, if he starts working again as a set designer and he needs to look on the Internet to order curtains from Amazon.com or somewhere, he can work with the probation officer and he can be allowed to do that. And I think that's very important to recognize here. This is not a 100% ban. You can never use it. You can use it, but with the permission of the probation officer. And many courts have upheld that type of condition when there is the probation officer exception. There are some cases, it is true, that hold that even with the probation officer exception, that that condition is overbroad. But none of them are under the plain error review, which is what we're doing here today. And lastly, there is the search condition. The Ninth Circuit, I can never pronounce this name of the case, Guadalarrino, I think it's pronounced. The Ninth Circuit in that case held that condition, very similar to the one at issue here, was permissible. Again, under plain error review, Judge Wilson did not err. And unless the panel has any other questions, I would submit at this time. Thank you. Thank you. Thank you, Your Honor. Very briefly, in terms of whether or not the court should have made findings with respect to special conditions in general, the Third Circuit in the Loy case has, in fact, held that so that the appellate court does not flounder in the zone of speculation. What zone of speculation are we floundering in? Well, in terms of why specifically did the court issue some of these? I just don't have any shadow of a doubt. I mean, why should I have any doubt after having read the trial transcript, read the sentencing hearing, listened to the judge's findings that he made at the sentencing hearing with respect to a number of things, have any doubt as to why he imposed the conditions that he did? Well, for example, the — How do you couple that with the fact that you had the letter recommending all those conditions from the probation officer in advance of the sentencing, which you don't get in other districts in the Ninth Circuit? Well, that's true. Certainly what Loy was saying is, regardless of that, even where no objection was raised, it's absolutely necessary. And they have a blanket rule that if, in fact, the judge fails to make findings, automatic remand. No ifs, ands, or buts. Sounds like a rule that may be necessary in the Third Circuit, but not in this case. Well, Your Honor, I think, in fact, what we're talking about here, as I mentioned before, the sex offender treatment, the court imposed it, yet also said that Mr. Graydon was not a sex offender. The Internet restrictions, what courts have said is — Counsel, let's talk about that. I mean, the whole crime was related to the Internet. This seems to me to be absolutely beyond pale. Common sense tells you that we don't want your client back on the Internet. He does bad things when he gets on the Internet. Well, Your Honor, all I can say to that is Mr. Reardon had no improper contact with the child as a result, independent of the Internet or on the Internet. But that's not the crime that he was convicted of. No, but what courts — The crime is using the Internet to receive transmissions of prohibited pictures of child pornography. Well, that's correct, Your Honor. I can't think of a clearer reason why this kind of a restriction ought not be imposed in this case. Well, and again, all I can do is turn — is point your attention to what many of the other circuits have said, is that we're only going to impose an absolute ban such as this if, in fact, the defendant had used the Internet to have actual improper contact with a minor, that if it's just involving child pornography, we're not going to impose such a restrictive condition, especially given the importance of the Internet in today's society. Thank you. We understand that certain conditions exist. Thank you. Both counsel and that have just arguably been submitted.
judges: Wallace, Rymer, Tallman